UNITED STATES DISTRICT COURT
FILED
NOV 12 2026
ANDREW W. MOELLER, CLERK
WESTERN DISTRICT OF NY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES

v.

ANDRES J. PIZARRO CAMPOS a/k/a KIKI, *et al.*,

Defendants.

1:25-CR-31 JLS (MJR)

REPORT, RECOMMENDATION AND ORDER

This case has been referred to the undersigned by the Hon. John L. Sinatra, Jr. pursuant to 28 U.S.C. § 636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions. (Dkt. No. 4)

**BACKGROUND**

Defendants Andres J. Pizarro Campos, Max Pizarro Campos, Cindy S. Frank, Edward E. Leeper Jr., Chauncy J. Robinson, Latika Saintkitts, Jason E. Talley, Jaquez L. Thomas, and Joseph J. Thayer are charged with conspiring with Joseph S. Zaso and others, beginning in or before 2018 and continuing through on or about May 26, 2022, to possess with intent to distribute one kilogram or more of a mixture and substance containing heroin and 400 grams or more of a mixture and substance containing fentanyl, as well as to use and maintain a place for the purpose of manufacturing, distributing, and using heroin and fentanyl (in violation of Section 846 of Title 21 of the United States Code). (Dkt. No. 1, the "Indictment") Defendants Andres Pizarro Campos and Max Pizarro Campos are charged with using and maintaining 204 Hazzard Street, lower apartment, Jamestown, New York, for the purpose of manufacturing, distributing, and using heroin

and fentanyl, between in or about October 2021 and continuing through February 22, 2022 (in violation of Section 856(a)(1) of Title 21 of the United States Code and Section 2 of Title 18 of the United States Code). (*Id.*) Andres Pizarro Campos and Max Pizarro Campos are also charged with the possession of a firearm in furtherance of a drug trafficking crime, beginning in or about 2019 and continuing through in or about February 2022 (in violation of Section 924(c)(1)(A)(i) and 2 of Title 18 of the United States Code). (*Id.*) Defendant Cindy Frank is charged with obstruction of justice, based on allegedly false testimony she provided to the grand jury on July 26, 2023 (in violation of Section 1503 of Title 18 of the United States Code). (*Id.*)

Defendants Andres Pizarro Campos, Max Pizarro Campos, Cindy Frank, Latika Saintkitts, Chauncy Robinson, and Jason Talley have filed omnibus discovery motions.[1] (Dkt. Nos. 112, 193, 194, 195, 253, 254) Defendants Andres Pizarro Campos, Cindy Frank, and Latika Saintkitts have moved to dismiss the Indictment, and defendant Jason Talley has moved for severance. (Dkt. Nos. 112, 193, 194, 253) In addition, Max Pizarro Campos has moved to suppress evidence recovered from a search of 204 Hazzard Street on February 22, 2022 as well as statements he made to law enforcement that same day.

---

[1] The discovery motions filed by defendants Andres Pizarro Campos and Latika Saintkitts were made by previous counsel to these defendants. Current defense counsel for Pizarro Campos and Saintkitts were given the opportunity to supplement those motions but elected to rely on the motions filed by prior counsel. (Dkt. Nos. 286, 306) On January 12, 2026, the Court ordered that defendant Edward Leeper undergo a psychiatric or psychological examination to determine his mental competency. (Dkt. Nos. 178, 182) During a status conference on October 19, 2026, the Court indicated that the Bureau of Prisons' evaluation concluded that defendant Leeper is competent to proceed to trial. (Dkt. No. 307) Defense counsel indicated that he retained an expert, that this expert had met with defendant Leeper, and that defense counsel had no basis to oppose the Bureau of Prisons' finding of competency. (*Id.*) Pretrial motions by defendant Leeper are due to be filed by December 21, 2026. (Dkt. No. 308) Defendant Jaquez Thomas entered into a plea agreement with the Government and was sentenced by Judge Sinatra on April 8, 2026. (Dkt. No. 220) Defendant Joseph Thayer entered into a plea agreement with the Government and is scheduled to be sentenced on February 22, 2027. (Dkt. No. 289)

(Dkt. No. 195) The Government has filed responses to defendants' motions and has moved for reciprocal discovery. (Dkt. Nos. 201, 207, 218, 266, 267, 278)

## DISCUSSION

The Court will first address defendant Max Pizarro Campos' motions to suppress evidence and statements; defendants Andres Pizarro Campos, Cindy Frank, and Latika Saintkitts' motions to dismiss the Indictment; and defendant Jason Talley's motion for severance. The Court will then turn to defendants' non-dispositive discovery requests and the Government's request for reciprocal discovery.

### *Motion to Suppress Evidence by Max Pizarro Campos*

Defendant Max Pizarro Campos moves to suppress evidence recovered from a search of 204 Hazzard Street, Jamestown, New York on February 22, 2022, pursuant to a search warrant signed by Jamestown City Court Judge George Panebianco on February 16, 2022.[2] (Dkt. No. 195) Defendant points to a number of alleged deficiencies and/or misrepresentations in the warrant application and contends that the warrant was issued without probable cause.

A search warrant issued by an impartial magistrate is presumptively valid. *United States v. Smith*, 9 F.3d 1007, 1012 (2d Cir. 1993). Where, as here, the Court is reviewing the probable cause determination of an independent magistrate, it asks solely "whether the issuing judicial officer had a substantial basis for the finding of probable cause."

---

[2] Together with his suppression motion, Max Pizarro Campos filed a declaration stating that on February 22, 2022, he resided in the downstairs unit (Apartment 1) of 204 Hazzard Street. (Dkt. No. 195-7, pg. 3) Defendant indicated that his mother owns the residence, and that he had resided there for six years prior to the date of the search. (*Id.*) Pizarro Campos further stated that 204 Hazzard Street is the address listed as his residence on his driver's license; that he sleeps at the residence every night; that he receives mail at the residence; and that he keeps clothing and other personal items at the residence. (*Id.*)

*United States v. Wagner*, 989 F.2d 69 (2d Cir. 1983). *See also Illinois v. Gates*, 462 U.S. 213, 236 (1983) (deference is given to the issuing magistrate). The Court has considered each of defendant's arguments here and finds, for the following reasons, that the warrant authorizing the search of 204 Hazzard Street was lawful and valid.

*Statements by the CI*

The instant warrant was supported by the affidavit of Detective Richard Hooks of the Jamestown Police Department. (Dkt. No. 279, pgs. 2-9) Therein, Detective Hooks affirms that on September 5, 2021, he received information that an individual was planning to travel from Jamestown to Buffalo, in order to purchase a large quantity of fentanyl from Joseph Zaso. (*Id.*) This individual was later surveilled traveling from Jamestown to Zaso's residence in Buffalo, and then back to Jamestown, at which time the individual's vehicle was stopped by law enforcement. (*Id.*) The individual was arrested and found to be in possession of over 300 grams of fentanyl. (*Id.*) Detective Hooks further affirmed that, during a post-*Miranda* interview, this individual (hereinafter referred to as the "CI") informed law enforcement that he/she purchased the fentanyl from Zaso and "that Zaso supplies large quantities of fentanyl to Andres Pizarro Campos DOB: 2/25/1992 and 'Kiki' Max E. Pizarro Campos DOB: 5/22/1990 at 204 Hazzard Street in Jamestown, NY." (*Id.*)

Defendant argues the statements provided by Detective Hooks in the warrant application, regarding the information provided by the CI, were materially false or misleading. To prove this point, defendant points to the CI's recorded interview with law enforcement following his/her arrest on September 16, 2021 as well as the DEA Report of Investigation (DEA-6) summarizing that interview (Dkt. No. 278, Govt's Exh. C-1; Dkt.

No. 279, pgs. 37-40) Defendant notes that during the recorded interview and in the DEA-6, law enforcement indicates that the CI was found to be in possession of heroin at the time of his/her arrest. (*Id.*) The DEA-6 states that the CI told law enforcement that "there are two Puerto Rican males, 'Andreas' and 'Kiki', that reside on Hazzard St., Jamestown, NY...*and that based on conversations [the CI] had with Zaso*, Andreas and Kiki are distributing similar amounts of Zaso's *heroin* as [distributed by the CI]." (Dkt. No. 279, pg. 37) (emphasis added). During the recorded interview, the CI is asked by law enforcement if he/she knows Andres and Kiki's full names. (Dkt. No. 279, Govt's Exh. C) The CI states that he/she does not. (Id.)

In comparing the warrant application to the recorded interview and the DEA-6, defendant emphasizes that (1) Hooks' affidavit states that the CI purchased fentanyl from Zaso and that the CI told law enforcement that the Pizarro Campos defendants also purchase fentanyl from Zaso, while in the recorded interview and in the DEA-6, law enforcement identified the narcotic involved to be heroin; (2) Hooks' affidavit suggests that the CI had personal knowledge of the Pizarro Campos defendants' narcotics trafficking activities, while the recorded interview and the DEA-6 shows that, in reality, the CI's basis of knowledge was provided by Zaso; and (3) Hooks' affidavit suggests that the CI knew the Pizarro Campos defendants' first and last names, dates of birth, and exact street address, while the recorded interview and the DEA-6 shows that, in reality, the CI only knew their first names and that they lived somewhere on Hazzard Street.[3] Defendant

[3] Defendant also emphasizes that Hooks' affidavit indicates that the CI told law enforcement that the Pizarro Campos defendants were getting large quantities of fentanyl from Zaso, while the recorded interview indicates that the CI did not affirmatively make this statement. Instead, the CI agreed with law enforcement's characterization of the amount of narcotics involved. (Dkt. No. 279, Govt's Exh. C; Dkt. No. 283, pg. 9) ("OFFICER: And they're getting similar amounts as to you? CI: Yeah. OFFICER: So anywhere from 100 to 300 grams. CI: I think so, yeah.")

argues that these discrepancies constitute material misrepresentations which invalidate the warrant or, at a minimum, require the Court to hold a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

To trigger the right to a *Franks* hearing, a defendant must make a "substantial preliminary showing" that (1) the affidavit contains a false statement or omission, (2) the false statement or omission was made deliberately or recklessly, and (3) the false statement or omission was material to the issuance of the warrant. *United States v. McKenzie*, 13 F.4th 223, 236 (2d Cir. 2021) (accord *Franks*, 438 U.S. at 155). This preliminary showing "must be more than conclusory" and "must be accompanied by an offer of proof." *United States v. Falso*, 544 F.3d 110, 125-26 (2d Cir. 2008). “The burden to obtain [a *Franks*] hearing is a heavy one, and such hearings are exceedingly rare.” *United States v. Melendez*, 16-CR-33, 2016 U.S. Dist. LEXIS 98940, at *7 (S.D.N.Y. July 28, 2016). *See also Franks*, 438 U.S. at 171 (“There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.”).

A *Franks* hearing is not warranted here. First, the record is devoid of evidence that Detective Hooks made deliberate false statements or omissions in the warrant application regarding the CI’s basis of knowledge. Hooks could, arguably, have been more precise in describing the CI’s basis of knowledge with regard to drug trafficking by the Pizarro Campos defendants, namely that it was based on information provided to the CI by Zaso. However, Hooks never affirmatively represents, to the issuing magistrate, that the CI’s information was based on the CI’s own personal observations of the Pizarro Campos defendants’ criminal activities. *United States v. Millar*, 79 F.3d 338, 343 (2d Cir. 1996) (finding that the required intent was not shown because there was no evidence of

"deliberate prevarication"). And while reckless disregard "can sometimes be inferred from the omission of critical information," that inference "is not to be automatically drawn because a reasonable person would have included the omitted information." *United States v. Rajaratnam*, 719 F.3d 139, 154 (2d Cir. 2013). Here, in light of all the other information contained in the warrant application, which is discussed in more detail later, the Court does not find that the CI's basis of knowledge was "critical" to the probable cause finding or that a reasonable person would necessarily have included those details in the warrant application.

Second, defendant is correct that the recorded interview and the DEA-6 reflect that the CI knew the Pizarro Campos defendants only as "Andreas and Kiki that reside on Hazzard Street," while the warrant application wrongly suggests that the CI relayed more specific information about the Pizarro Campos defendants' last names, specific address, and dates of birth. However, the totality of the information contained in the warrant application shows that Detective Hooks would have ascertained the Pizarro Campos defendants' identities through both the actual information provided by the CI as well as through law enforcement's own long-standing and independent investigation of the narcotics conspiracy linked to Zaso. Stated another way, the record here demonstrates that, at the time Hooks applied for the warrant, it would have been clear to him that the CI's reference to "two Puerto Rican males, Andres and Kiki, that reside on Hazzard Street" was a reference to the Pizarro Campos defendants and the 204 Hazzard Street address. In short, there is no "credible and probative evidence" that Hooks' statement regarding the CI's identification of the Pizarro Campos defendants was either "designed to mislead"

or "made in reckless disregard of whether it would mislead." *Rajaratnam*, 719 F.3d at 154.[4]

With regard to the references to "heroin" in the recorded interview and the DEA-6, in contrast to the references to "fentanyl" in warrant application, the Court finds no evidence that this discrepancy was intentional, designed to mislead, or involved a reckless disregard for the truth. This discrepancy could have been a result of a misstatement during the interview, an error in drafting the DEA-6, or an error in drafting the warrant affidavit. It is also possible that the narcotics involved here were a mixture of both heroin and fentanyl.[5] Regardless, it was apparent, based on the record available to law enforcement at the time they applied for the warrant, that the CI regularly purchased narcotics from Zaso and that it was the CI's understanding that the Pizarro Campos defendants were also purchasing significant amounts of the same type of narcotic from Zaso. While Hooks may have erred by failing to precisely or correctly describe the type of narcotic in warrant application, there would have been no reason for him to provide *deliberately false or misleading* information in that regard, since either description would

[4] Defendant also points to the fact that, on November 16, 2022, nearly nine months after execution of the warrant, the CI was unable to identify Max or Andres Pizarro Campos in a photo array. (Dkt. No. 195-1, pg. 10) First, the CI's inability to identify the Pizarro Campos defendants in a photo array does not mean that the information the CI provided regarding defendants involvement in narcotics distribution with Zaso was inaccurate or unreliable. And even if it did, a "*Franks* hearing is not required when it is sought merely on the basis of an allegation that the information in the search warrant affidavit subsequently proves to be inaccurate, especially when that information derives from a source independent of the affiant." *United States v. Sykes*, 05-CR-6057, 2006 U.S. Dist. LEXIS 57774 at *5 (W.D.N.Y. July 31, 2006). *See also United States v. Campino*, 890 F.2d 588, 592 (2d Cir. 1989) ("*Franks* does not require that all statements in an affidavit be true; it simply requires that the statements be 'believed or appropriately accepted by the affiant as true.") (internal citations omitted). The record here shows that at the time he applied for the search warrant, Detective Hooks had reason to believe that the CI was credible and that the CI's information was accurate.

[5] During oral argument, the Government represented that law enforcement sometimes use the terms heroin and fentanyl interchangeably.

have supported his assertion that evidence of narcotics crimes was likely to be found at the residence associated with the Pizarro Campos defendants. *See United States v. Simpson,* 131 F. Supp 2d 316, 324 (Dist. Conn. 2001); *aff'd* 69 F. App'x 492 (2d Cir. 2003) (with respect to the first prong of the *Franks* analysis, "[t]he focus is not on whether a mistake was made, but rather on the intention behind the mistake."); *United States v. Nelson*, 828 F. App'x 804, 807 (2d Cir. 2020) (explaining that a "reviewing court should not interpret supporting affidavits in a hypertechnical, rather than a commonsense manner"); *United States v. Lauria*, 70 F.4th 106, 132 (2d Cir. 2023) (where misstatements in the warrant result from negligence, carelessness, or simple mistake, suppression is not required).[6]

Next, even if the Court were to determine that Detective Hooks made deliberately false or misleading statements in the warrant application, which the Court finds he did not, a *Franks* hearing still would not be warranted here. To determine whether misstatements were material to the issuing judge's probable cause determination, a reviewing court "should disregard the allegedly false statements," *United States v. Awadallah*, 349 F.3d 42, 65 (2d Cir. 2003), and "insert the omitted truths," *Rajaratnam*, 719 F.3d at 146. "If, after setting aside the allegedly misleading statements or omissions, the affidavit, nonetheless, presents sufficient information to support a finding of probable

---

[6] The Court also rejects defendant's argument that Detective Hooks' statement that the CI indicated that Zaso supplies large quantities of narcotics to the Pizarro Campos defendants was materially misleading. Defendant emphasizes that during the interview with law enforcement, the CI did not state this fact affirmatively, but instead only answered "I think so, yeah" when Detective Hooks asked if Andres and Kiki were getting similar amounts as the CI. The Court finds defendant's argument to be a distinction without a difference. The fact remains that the CI provided information to law enforcement suggesting that the Pizarro Campos defendants were receiving significant quantities of narcotics from Zaso, and Detective Hooks communicated this information in the warrant application.

cause, the district court need not conduct a *Franks* hearing." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). Here, had the warrant application for 204 Hazzard stated (1) that the CI's information as to the Pizarro Campos defendants' drug trafficking activities was provided by Zaso and not the CI's own personal knowledge; (2) that the CI only knew the Pizarro Campos defendants' first names and the name of the street they resided on; and (3) that the CI provided information as to the purchase heroin, instead of fentanyl, the application still would have contained sufficient probable cause.

Probable cause "is not a high bar." *Kaley v. United States*, 134 S. Ct. 1090, 1103 (2014). It "requires only a probability or substantial chance of criminal activity, not an actual showing of criminal activity." *Gates*, 462 U.S. at 232. *See also United States v. Gaskin*, 364 F.3d 438, 457 (2d Cir. 2004) (finding probable cause "does not demand certainty but only a 'fair probability' that contraband or evidence of a crime will be found.") Moreover, "a finding of probable cause may be based, in whole or in part, on hearsay from a reliable informant." *United States v. Laufer*, 245 F. Supp. 2d 503, 507 (W.D.N.Y. 2003) (citing *Gates*, 62 U.S. at 243-46). And the reliability of a cooperating source may be shown when the source's information is "corroborated in material respects by independent evidence." *Wagner*, 989 F.2d at 72-73.

Here, had the warrant application specified that the CI's basis of knowledge was provided by Zaso and not the CI's own independent experience, there still remained a sufficient basis for the issuing magistrate to credit the CI's statements. To that end, the CI's information was corroborated, in material respects, by both the circumstances of the CI's arrest as well as law enforcement's independent investigation into alleged drug trafficking activities involving Zaso, the Pizarro Campos defendants, and 204 Hazzard

Street. The warrant application states that the Jamestown Metro Drug Task Force, the Southern Tier Regional Drug Task Force, and the Drug Enforcement Administration ("DEA") had been conducting a years-long investigation into a large scale fentanyl distribution organization in Jamestown and Buffalo, involving Joseph Zaso. The CI was arrested on September 16, 2021, after purchasing narcotics from Zaso. The CI told law enforcement that, based on conversations the CI had with Zaso, two Puerto Rican males by the names of "Andreas" and "Kiki" reside on Hazzard Street in Jamestown and receive similar amounts of Zaso's narcotics.

These in-person statements, made by a participant in the very criminal activity under investigation by the Jamestown police and the DEA at the time Hooks applied for the warrant, carry an indicia of reliability. *See United States v. Ceballos*, 812 F.2d 42, 50 (2d Cir. 1987) ("a participant in the criminal activity at issue need not be shown to have previously been reliable before the authorities may rely on [their] statements") (internal citations omitted); *United States v. Steppello*, 664 F.3d 359 (2d Cir. 2011) (explaining that there is "no need to show past reliability when the informant is in fact a participant in the very crime at issue"); *United States v. Salazar*, 945 F.2d 47, 50-51 (2d Cir. 1991) (noting that a "face-to-face informant must ... be thought more reliable than an anonymous telephone tipster, for the former runs the greater risk that he may be held accountable if his information proves false.").

And as stated above, had the warrant application been corrected to reflect that the CI and the Pizarro Campos defendants purchased heroin from Zaso, a probable cause finding still would been appropriate here, even though the warrant application referenced defendants' alleged involvement with the distribution of fentanyl. Indeed, Detective Hooks

states, in the application, that "[t]here is reasonable cause to believe that…[e]vidence of the crime(s) of Criminal Possession of a Controlled Substance, and Criminal Possession of a Weapon; *including but not limited to* Fentanyl" would be found at 204 Hazzard. (Dkt. No. 279, pg. 2) (emphasis added)

Moreover, additional information provided in the warrant application shows that the CI's statements were corroborated by independent police investigation, and that the CI's statements were not the only basis for law enforcement to believe that evidence of drug trafficking was likely to be found at 204 Hazzard Street. To that end, the warrant application indicates that following the CI's interview, a tracking device was installed on Zaso's vehicle. (Dkt. No. 279, pgs. 2-9) This device showed that Zaso would regularly travel from his home in Buffalo to 204 Hazzard, often stopping there multiple times a week for short periods of time. (*Id.*) During at least one of these trips, Detective Hooks observed Max Pizarro Campos enter the residence while Zaso was present. (*Id.*) Hooks further stated, in the warrant application, that law enforcement previously obtained a search warrant for the Facebook messenger account of Andres Pizarro Campos. (*Id.*) Hooks recounted messages exchanged by Pizarro Campos and another individual which, in Hooks' training and experience, appeared to refer to the sale of fentanyl, heroin, and firearms. (*Id.* at pg. 5) (noting that in one of the Facebook messages there is a reference to purchasing "food" and that, in Detective Hooks' training and experience, "NY based fentanyl distributors refer to fentanyl and heroin as 'food' or 'dog food'"). This individual also sent Pizarro Campos a picture of a machine gun, which he referred to as "fully auto." (*Id.*) The warrant application also included a picture posted by Andres Pizarro Campos

on April 8, 2013, which shows him holding what appears to be a black pistol and magazine.[7] (*Id.*)

Also in the warrant application, Detective Hooks details how members of the Jamestown Metro Drug Task Force conducted a "garbage pull" from 204 Hazzard on December 7, 2021, by securing several garbage bags that were on the terrace in front of the residence. (*Id.*) Officers found several plastic bags with the corners ripped off, and one of the bags contained a grey powder residue that field tested positive for the presence of fentanyl. (*Id.*) Offices also found a small amount of a suspected cutting agent and a possible drug ledger. (*Id.*) A second garbage pull was conducted at 204 Hazzard on February 8, 2022, at which time officers again found baggies containing a grey powder residue that field tested positive for the presence of fentanyl. (*Id.*) Hooks further indicated that he determined that the utilities at 204 Hazzard were registered in the name of Patricia Campos, the mother of Andres Pizarro Campos and Max Pizarro Campos. (*Id.*) Hooks also surveilled 204 Hazzard in January and February of 2022 and saw Andres Pizarro Campos come and go from the residence on several occasions. (*Id.*)

Thus, the search warrant application here was supported by more than adequate probable cause to believe that evidence of unlawful possession of narcotics and firearms would be found at 204 Hazzard Street, and would have been so supported even if Detective Hooks' alleged misstatements had been corrected. *See United States v. Nejad*, 436 F. Supp. 3d 707 (S.D.N.Y. 2020) ("Even assuming these affidavits contain errors that require correcting, excising the alleged errors from them only demonstrates the

---

[7] The warrant application also noted that Detective Hooks inquired with the Chatauqua County Pistol Permit Office and found that Andres Pizarro Campos does not have a New York state pistol permit. (Dkt. No. 279, pg. 6)

overwhelming strength of the probable cause showing."); *United States v. Osborne*, 739 F. App'x 11, 16-17 (2d Cir. 2018) (summary order) (affirming denial of *Franks* hearing concerning wiretap and search warrant applications where erroneous information "was neither material nor necessary to an ultimate finding of probable cause").

*The Trash Pulls and Field Tests*

Defendant next argues that the search warrant is not supported by probable cause because the presence of drugs in trash bags outside of 204 Hazzard Street failed to establish a sufficient nexus between ongoing narcotics possession and the residence. To that end, defendant cites *United States v. Abernathy*, 843 F.3d 243 (6th Cir. 2016), where the Sixth Circuit found that "[a]lthough the trash pull evidence certainly suggested that someone in the residence had smoked marijuana recently, that fact alone does not create an inference that the residence contained additional drugs." *Id*. at 256-57.

*Abernathy* is distinguishable from the matter at hand. In *Abernathy*, the Sixth Circuit concluded that "the marijuana roaches and [marijuana]-laced plastic bags [law enforcement] recovered from the trash pull...were insufficient, *standing alone*, to create probable cause to search defendant's residence." 843 F.3d at 256-57 (emphasis added). Differently here, the warrant application for 204 Hazzard did not rely solely on drug evidence found in a single trash pull. Indeed, the warrant here also contained information, provided by a CI, linking defendants and 204 Hazzard to a long-standing narcotics conspiracy; surveillance of Zaso traveling to 204 Hazzard multiple times a week for short periods of time; and Facebook messages wherein Andres Pizarro Campos appears to discuss the sale of fentanyl and/or heroin as well as firearms. *See United States v. Jenkins*, 819 Fed. Appx. 651 (10th Cir. 2020) (distinguishing *Abernathy* and finding that

defendant's ongoing drug-related prosecution and the trash-pull evidence, when combined together, supplied probable cause to believe that evidence of drug use or drug possession would be found at residence); *United States v. Monteith*, 662 F.3d 660, 664 (4th Cir. 2011) (probable cause established where warrant application detailed defendant's "several drug offenses" in addition to trash pull evidence).

And unlike the warrant at issue in *Abernathy*, which relied on a single trash pull, the warrant here described two trash pulls in close proximity, both of which resulted in the recovery of residue containing fentanyl. "While one search turning up [narcotics] in the trash might be a fluke, two indicate a trend." *See United States v. Leonard*, 884 F.3d 730 (7th Cir. 2018) (concluding that two trash pulls taken a week apart, both testing positive for cannabis, were sufficient standing alone to establish probable cause for a search warrant). Moreover, the trash pulls at 204 Hazzard also resulted in the recovery of a suspected cutting agent and a possible drug ledger. *See United States v. Seidel*, 677 F.3d 334, 338-39 (8th Cir. 2021) (probable cause established where trash pull evidence included a leger noting "pay-owe sheets" for drug transactions); *United States v. Juneau*, 73 F.4th 607 (8th Cir. 2023) (finding that trash pull yielding multiple bags containing methamphetamine residue, combined with other evidence linking defendant and his residence to drug trafficking, supplied sufficient probable cause for issuance of a search warrant and noting that the "trash pull, in particular, strongly supports a finding of probable cause"); *United States v. Harris*, 118 F. App'x 592, 593-94 (3d Cir. 2004) (substantial basis for the magistrate's issuance of search warrant where there was ongoing narcotics investigation; two trash pulls in close proximity which recovered drug-related evidence; surveillance of the residence; and information as to defendant's drug and firearm history).

Defendant also points to the fact that Detective Hooks' affidavit does not specify which type of field tests were used to test the residue found during the trash pulls at 204 Hazzard, nor does Hooks acknowledge that "various field tests have been found to have unacceptable levels of false positives." Defendant submits that the failure to include this information warrant a *Franks* hearing. The Court disagrees.

Detective Hooks was not "expected to include every piece of information gathered in the course of [his] investigation," *Awadallah*, 349 F.3d at 67-68, nor was he required to include all potentially exculpatory information in the warrant application, *United States v. Curcio*, 24-CR-312, 2025 U.S. Dist. LEXIS 162848 (S.D.N.Y. Aug. 21, 2025). Here, the type of field test used by the officers was not material to the warrant request. Indeed, the record is devoid of evidence that the field tests conducted on the residue found at 204 Hazzard were inaccurate. The record is also devoid of evidence that Hooks had any non-speculative reason to doubt the accuracy of the field tests. *See United States v. Marin-Buitrago*, 734 F.2d 889, 895 (2d Cir. 1984) (omissions from a warrant are not material unless they cast doubt on probable cause). And even if the field tests used here could potentially have generated false positives, "[t]he fact that an innocent explanation may be consistent with the facts alleged...does not negate probable cause...[and] [n]either should it preclude a good faith belief in probable cause." *United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1984). *See also United States v. Patterson*, 25 F.4th 123, 150 (2d Cir. 2022) ("To find probable cause, officers are not required to rule out...innocent explanation[s] for suspicious facts.").

Finally, even if Hooks had informed the issuing magistrate that field tests sometimes generate false positives, or that certain field tests are more likely to generate

false positives, the totality of the information presented here, which did not rely solely on the results of the field tests, still would have established probable cause for a search of 204 Hazzard. *See Gates*, 462 U.S. at 246 (explaining that the standard for "probable cause does not demand the certainty we associate with formal trials"); *United States v. Vilar*, 05-CR-621, 2007 U.S. Dist. LEXIS 26993 (S.D.N.Y. Apr. 4, 2007) (noting that, in general, "claims based on omissions are less likely to justify suppression than claims of intentionally or recklessly false assertions").[8]

*Staleness*

Defendant further contends that the warrant relied on stale information that was insufficient to support probable cause. Indeed, "a warrant may lack probable cause where the facts supporting criminal activity have 'grown stale' by the time the warrant issues." *United States v. Guay*, 464 F. Supp. 3d 507, 514-16 (W.D.N.Y. 2020) (citing *United States v. Raymonda*, 780 F.3d 105, 114 (2d Cir. 2015). There is "no bright-line rule for staleness." *Raymonda*, 780 F.3d at 114. The two critical factors in determining staleness are the age of the facts alleged and the nature of the conduct alleged to have violated the law. *Id.* "Where the affidavit establishes a pattern of continuing criminal activity, such that there is reason to believe that the alleged criminal activity was not a onetime occurrence, the passage of time between the last alleged event and the warrant application is less

---

[8] Defendant emphasizes that the mail recovered during the trash pulls was addressed to Patricia Campos, who resided in the upstairs unit of 204 Hazzard, while he resided in the downstairs unit, and that the warrant failed to properly describe 204 Hazzard's "two-unit configuration." Likewise, defendant contends that the information in the search warrant application failed to establish that he was personally involved in any criminal activity. Even if that contention was true, it is irrelevant. In order to be valid, the search warrant application was only required to demonstrate probable cause to believe that evidence of the unlawful possession of narcotics or firearms was likely to be found at 204 Hazzard. For all the reasons stated herein, the warrant satisfied this requirement.

significant. *Id*. (citing *Wagner*, 989 F.2d 75) In light of these considerations, the information provided in the search warrant for 204 Hazzard was not stale.

The warrant application here established the likelihood of an ongoing and continuous pattern of criminal activity. Detective Hooks explained how the Jamestown Metro Drug Task Force, the Southern Tier Regional Drug Task Force, and the DEA had been investigating a large scale fentanyl distribution organization involving Zaso, in the Jamestown and Buffalo areas, over the past few years. Andres Pizarro Campos' Facebook messages, which appear to discuss the sale of fentanyl and firearms, occurred in December of 2019. The seizure of drugs from the CI, and the CI's interview with law enforcement, took place in September of 2021. Zaso was surveilled making regular trips to 204 Hazzard a couple of months later, in November and December of 2021. The trash pulls occurred on December 7, 2021 and February 8, 2022. The search warrant was obtained on February 16, 2022, eight days after the second trash pull resulted in a positive field test for fentanyl.

Courts in the Second Circuit have found probable cause to remain current in narcotics cases, like this one, even when the gap between the most recent information and the search was substantial. For example, in *Rivera v. United States*, 928 F.2d 592, 602 (2d Cir. 1991), the Second Circuit noted that its precedents have upheld relying on information "22 days to 18 months old" in search warrant applications related to ongoing narcotics investigations. The same rationale is to be applied here, where the alleged criminal conduct was not a singular and isolated incident but instead part of a conspiracy to distribute narcotics over a sustained period of time. *See e.g., United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) ("Narcotics conspiracies are the very paradigm of the

continuing enterprises for which courts have relaxed the temporal requirements of non-staleness."); *United States v. Singh*, 390 F.3d 168, 182–83 (2d Cir. 2004) (information provided in support of a search warrant that was over a year and a half old was not considered stale where the individuals painted "a picture of continuing illicit conduct and ongoing criminal activity" that "were ongoing, and there was no indication that they would cease at any time in the future.").[9]

*Good Faith Exception*

Lastly, the Court finds that even if the search warrant for 204 Hazzard Street had been issued without sufficient probable cause, the good faith exception to the exclusionary rule would prevent suppression here. In *United States v. Leon*, the Supreme Court held that the exclusionary rule does not apply where "an officer acting with an objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." 468 U.S. 897, 918-21 (1984). The good faith exception does not apply where: (1) the issuing magistrate was knowingly misled; (2) the issuing magistrate knowingly abandoned their judicial role; (3) the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; or (4) the warrant is so facially deficient that reliance upon it would be unreasonable. *Id.* at 923. The record here is devoid of evidence that any exception to *Leon* would apply in this case.

---

[9] The warrant here authorized a search of "any digitally stored data…stored on cell phones, computers, hard drives, removable storage drives, or CD and DVD data disks." (Dkt. No. 279, pg. 9) Defendant argues that this portion of the warrant is overbroad and lacks particularity. The Government responds that it has been unable to access the content of the cell phones seized pursuant to the search warrant, and is therefore not introducing any evidence from those devices at trial. Thus, defendant's arguments with regard to overbreadth and particularity are moot. The Government also advises that defendant signed a consent to search a surveillance system connected to the residence, but that the Government does not intend to use this evidence at trial.

For all of these reasons, defendant Max Pizarro Campos' motion to suppress evidence recovered from the February 22, 2022 search of 204 Hazzard Street should be denied.

**Motion to Suppress Statements by Max Pizarro Campos**

It is undisputed that following the execution of the search warrant at 204 Hazzard Street on February 22, 2022, Max Pizarro Campos was taken into custody and transported to the Jamestown Police Department by Jamestown Police Department Officer Alexis Carlson. (Dkt. No. 300, Gov't Exh. F; Dkt. No. 301) Upon arrival, Officer Carlson escorted defendant to an interview room and removed his handcuffs. (*Id.*) Officer Carlson and defendant remained in the interview room together for approximately one hour and twenty minutes, during which time they engaged in an extensive conversation about a variety of topics. (*Id.*) Detective Hooks and Special Agent David Lauer then entered the room, at which time Officer Carlson left. (*Id.*) Detective Hooks stated to defendant, "I'd like to have a little conversation with you, but before we can do that, because you're here, I have to go through all this stuff." (*Id.*) Detective Hooks then read *Miranda* warnings to defendant and asked defendant if he understood his rights. (*Id.*) Defendant answered, "yes." (*Id.*) Detective Hooks next asked defendant if, having these rights in mind, he wished to speak to them. (*Id.*) Defendant again answered, "yes," and signed a waiver form. (*Id.*; Dkt. No. 278; Gov't Exh. G)

Defendant was then interviewed by Hooks and Lauer, during which time he admitted that he came into possession of a pistol through a drug transaction and also that he took steps to improve the gun's functionality. (Dkt. No. 300, Gov't Exh. F) Defendant also admitted that he had a shotgun for protection and made statements about narcotics.

(*Id.*) This entire encounter, including defendant's conversation with Officer Carlson, the reading of *Miranda* warnings, and defendant's interview by Detective Hooks and Agent Lauer, is captured on video. (*Id.*)

The Government submits that it does not intend to introduce, in its case-in-chief at trial, any statements defendant made to Officer Carlson during the "pre-*Miranda*" portion of the recording. The Government further submits that defendant's statements to Detective Hooks and Agent Lauer are admissible because defendant made a knowing and voluntary waiver of his Fifth Amendment rights before making those statements. Defendant counters that his statements to Hooks and Lauer were part of unlawful "two-step interrogation process whereby [defendant was] questioned without the proper warnings [by Carlson], made to confess, *Mirandized*, and then questioned again [by Hooks and Lauer]." *United States v. Pritchette*, 219 F. Supp. 3d 379, 383 (S.D.N.Y. 2016).

In *Missouri v. Seibert*, 542 U.S. 600, 609 (2004) which defendant relies on here, the Supreme Court ruled that officers may not employ a "question first" strategy whereby they intentionally withhold *Miranda* warnings until a suspect has confessed and then give the warnings in the midst of a coordinated and continuing interrogation. *See United States v. Williams*, 681 F.3d 35, 41 (2d Cir. 2012) (explaining "*Seibert* lays out an exception…for cases in which a deliberate, two-step strategy was used to obtain the postwarning confession."). Thus, a statement made by a suspect during a custodial interrogation, after a *Miranda* warning has been provided, "must nevertheless be suppressed if it is the product of a deliberate, two-step strategy, predicated upon violating *Miranda*." *See United States v. Cruz*, 840 F. Supp. 3d 162 (E.D.N.Y. 2026).

The Government argues that defendant has waived his right to challenge the admissibility of his statements based on a theory of an unlawful two-step interrogation process pursuant to *Seibert*, because defendant did not raise this argument in his original omnibus motion. The Court disagrees that waiver should apply here. In his original omnibus motion, defendant did indeed move to suppress statements he made to law enforcement at the Jamestown Police Department on February 22, 2022. (Dkt. No. 195-1, pgs. 28-30) While the Government is correct that defendant did not specifically rely on *Seibert* or the concept of an unlawful two-step interrogation process in his initial motion, defendant did acknowledge that the video of his statements contains both a "pre-*Miranda*" and "post-*Miranda*" set of interactions. (*Id.*) Defendant argued that his "pre-*Miranda*" statements were the product of interrogation and that the *Miranda* warnings by Detective Hooks were not effective. (*Id.*) Defendant requested a hearing to examine the circumstances under which his statements were made. (*Id.*) Defendant's reply brief then specifically raised the *Seibert* argument in connection with the interview by Hooks and Lauer. (Dkt. No. 283, pgs. 26-32) During oral argument of defendant's pretrial motions, the parties argued this issue before the Court, and the Court gave the Government an opportunity to submit supplemental briefing to further address the *Seibert* argument. (Dkt. Nos. 300, 301)

In light of the entire record here, the Court finds it preferable to address this issue on its merits rather than through waiver or default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993) (explaining that the Second Circuit has "oft-stated [its] preference for resolving disputes on the merits."); Fed R. Crim. P. 12(c) (noting that, for good cause, the court may grant relief from waiver); *United States v. Marseet*, 6:24-CR-

6032, 2025 U.S. Dist. LEXIS 7177, n.3 (W.D.N.Y. Jan. 14, 2025) ("Accordingly, while the Court need not consider arguments made for the first time in Defendant's reply, the Court has considered and rejects defendant's probable cause challenge."); *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005) (noting that a district court has discretion to consider arguments raised in a reply).

The Court also rejects the Government's contention that the *Seibert* argument has been forfeited because defendant does not specifically describe the manner in which his *Miranda* rights were violated nor does he specifically identify the statements he contends must be suppressed. Here, it is clear that defendant seeks to suppress any statements from his recorded interview with Hooks and Lauer, which the Government intends to introduce at trial, on the basis that they were obtained as a result of an unlawful two-step interrogation process. For similar reasons, the Court rejects the Government's argument that defendant lacks standing to challenge the lawfulness of his statements because he did not submit an affidavit or sworn statement. To be sure, a defendant seeking a *Miranda* suppression hearing must make more than a "bald assertion" that the statements in question were involuntary. *United States v. Mathurin*, 148 F.3d 68, 69 (2d Cir. 1998). More than a bald assertion has been made here. Defendant argues that he was subjected to interrogation by Carlson without the benefit of *Miranda* rights, and that his subsequent post-*Miranda* interview by Hooks and Lauer was part of a coordinated and deliberate two-step process to obtain a post-warning confession. The entire encounter is captured on video. Thus, the record before the Court already contains the specific factual basis for defendant's challenge.

Having found that defendant's arguments as to *Seibert* have not been waived, the Court next considers whether an evidentiary hearing is required to decide the factual and legal issues presented here. In evaluating the merits of defendant's suppression motion, the Court must first determine whether defendant's "initial statement, though voluntary, was obtained in violation of defendant's *Miranda* rights." *United Sates v. Moore*, 670 F.3d 222, 229 (2d Cir. 2021). If no *Miranda* violation occurred during the first encounter, there is no need to go further, and the post-*Miranda* statement need not be suppressed. *Id*.

However, if defendant's initial statement was the product of a *Miranda* violation, the Court must "review the totality of the objective and subjective evidence surrounding the interrogations in order to determine" whether law enforcement deliberately engaged in a two-step interrogation process. *United States v. Williams*, 681 F.3d 35, 41 (2d Cir. 2012). With respect to objective evidence, courts are guided by the following five factors: (1) "the completeness and detail of the questions and answers in the first round of interrogation," (2) "the overlapping content of the two statements," (3) "the timing and setting of the first and the second," interrogations, (4) "the continuity of police personnel" doing the questioning, and (5) "the degree to which the interrogator's questions treated the second round as continuous with the first." *Moore,* 670 F.3d at 228 (quoting *Seibert*, 542 U.S. at 616). As to subjective evidence of intent, a court should conduct "a somewhat 'closer scrutiny' of an investigator's testimony . . . when the proffered rationale is not a 'legitimate' reason to delay or where it 'inherently lacks credibility' in view of the 'totality of the circumstances.'" *Moore*, 670 F.3d at 229 (internal citations and quotations omitted). "[T]he Government bears the burden of disproving by a preponderance of the evidence that it employed a deliberate two-step strategy." *Williams*, 681 F.3d at 41.

The Government argues that defendant's pre-*Miranda* statements to Officer Carlson were not obtained in violation of his Fifth Amendment rights because those statements were not the product of interrogation. Thus, according to the Government, defendant's motion to suppress his post-*Miranda* statements to Detective Hooks and Agent Lauer can be denied on that basis alone. The Government further argues that, in any event, there was no deliberate two-step interrogation procedure used here, and thus no basis to suppress the post-*Miranda* statements.

In support of its position that (1) Officer Carlson did not interrogate defendant and (2) no deliberate two-step interrogation process was employed, the Government has submitted an affidavit from Officer Carlson. (Dkt. No. 300-1) Therein, Carlson states that on February 22, 2022, she was instructed to transport Max Pizarro Campos from 204 Hazzard Street to the Jamestown Police Department and stay with him until detectives arrived. (*Id.*) Carlson states that she did not "have any knowledge of the search warrant, or the raid that was conducted at 204 Hazzard Street, or why Pizarro Campos was taken into custody." (*Id.*) She indicates that while defendant did "make mention of possibly having 2 guns in his room and any drugs that he does get are for personal use only," she did not "follow up on those comments with any questions as that may have been connected to the search [o]r his arrest." (*Id.*) Carlson affirms that she "was not coached or instructed to talk to [defendant] about anything." (*Id.*) Carlson states that her conversation with defendant was not an interview and that she did not *Mirandize* defendant "because [she] was not asking him any questions about the investigation at hand." (*Id.*)

The Government submits that the Court can, and should, consider Officer Carlson's subjective intent, as described in her affidavit, in determining whether an interrogation took place during the pre-*Miranda* encounter. (Dkt. No. 300, pgs. 20-21) And as detailed in the case law discussed above, a determination as to whether a deliberate two-step interrogation process was used requires the Court to consider both objective and subjective evidence, including the subject intent of law enforcement. While an affidavit has been submitted by Carlson, the Court cannot assess a witness's credibility based on statements in an affidavit, nor would defendant have the ability to cross examine the affiant regarding statements about their intent. Thus, the Court finds that an evidentiary hearing is necessary to determine the issues presented here. **The Court will therefore conduct an evidentiary hearing addressing defendant Max Pizarro Campos' motion to suppress statements on January 12, 2027 at 10:30 a.m.**

***Motion to Dismiss the Indictment by Andres Pizarro Campos, Cindy Frank, and Latika Saintkitts***

Defendants Andres Pizarro Campos, Cindy Frank, and Latika Saintkitts move to dismiss the Indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure. (Dkt. Nos. 112, 193, 194) A pretrial motion to dismiss an indictment must satisfy a high standard. *United States v. Lazore*, 90 F. Supp. 2d 202, 203 (N.D.N.Y. 2000). In deciding a motion to dismiss an indictment for failure to state a criminal offense, "a court must assume the truth of the allegations in the indictment and determine whether the indictment is valid on its face." *United States v. Larson*, 07-CR-304, 2011 U.S. Dist. LEXIS 139357 (W.D.N.Y. Dec. 5, 2011) (accord *Costello v. United States*, 350 U.S. 359, 363 (1956)). An indictment is sufficient if it contains the elements of the offense charged and fairly informs a defendant of the charge against which she must defend. *United States v. Walsh*,

194 F.3d 37, 44 (2d Cir. 1999). Likewise, Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." *See* Fed. R. Crim. P. 7(c). In evaluating the facial sufficiency of an indictment, the court must not "look[ ] beyond the face of the indictment and dr[aw] inferences as to the proof that would be introduced by the government at trial." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998).

Count I of the Indictment alleges that Pizarro Campos, Franks, and Saintkitts participated in a narcotics conspiracy with Zaso and others, from in or before 2018 through on or about May 26, 2022, which involved the distribution of heroin and fentanyl and the maintenance of a drug involved premise. (Dkt. No. 1) Counts 3 and 4 allege that Pizarro Campos used and maintained 204 Hazzard Street for purposes of trafficking heroin and fentanyl and that he possessed a firearm in furtherance of drug trafficking. (*Id.*) Count 4 of the Indictment alleges that Frank obstructed justice on July 26, 2023, when she provided false testimony to the grand jury regarding (1) her knowledge of Zaso's drug trafficking activities; (2) her personal dealings with Zaso concerning drugs; and (3) her observations and conversations with Zaso concerning drugs. (*Id.*)

All counts of the Indictment contain the elements of the offenses; the nature of the accusations; and the date and place of the alleged criminal conduct. These allegations comply with Rule 7(c). The Indictment is also sufficient to inform defendants of the nature of the charges against them and to enable them to plead double jeopardy in a future prosecution based on the same set of facts.

In moving to dismiss the charges, defendant Frank argues that the Indictment contains circumstantial evidence and relies entirely on hearsay evidence by cooperating

witnesses who have incentive to provide information against her. Defendants Pizarro Campos and Saintkitts seem to allege that there was insufficient evidence presented to the grand jury to result in a valid indictment. These objections amount to a challenge of the sufficiency of the Government's evidence against defendants. While defendants may be able to successfully challenge the sufficiency of the Government's proof at trial, these arguments are premature and wholly insufficient to dismiss the Indictment. *See, e.g., United States v. Perez*, 575 F.3d 164, 166-67 (2d Cir. 2009) ("Unless the government has made what can fairly be described as a full proffer of the evidence it intends to present at trial . . . the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment."); *United States v. Elie*, 10 Cr. 336, 2012 U.S. Dist. LEXIS 15119 (S.D.N.Y. Feb. 7, 2012) ("[A] pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence.").

Thus, the Court recommends that defendants Andres Pizarro Campos, Cindy Frank, and Latika Saintkitts' motions to dismiss the Indictment be denied.

***Motion for Severance by Jason Talley***

Defendant Jason Talley moves for severance from his co-defendants and an immediate trial. (Dkt. No. 253) Defendant argues that a review of discovery shows that the alleged illegal activity has "absolutely nothing to do with [him]" and that a joint trial would result in spill-over prejudice. (*Id.*) Any motions for severance, based on either Federal Rule of Criminal Procedure 14 or any other grounds, are to be made to the trial judge, Judge Sinatra, pursuant to the directives in this Court's Scheduling Order. (Dkt. No. 215) *See United States v. Mireles*, 08 CR 34, 2009 U.S. Dist. LEXIS 109176 (W.D.N.Y. Nov. 23, 2009) (Severance motions "are more appropriately heard and

determined by the trial court, which is in the best position to rule on the issues presented.").

Defendant also asserts speedy trial as a reason for severance from his co-defendants. When more than one defendant is named in an indictment, the Speedy Trial Act imposes a "unitary time clock on all co-defendants joined for trial[.]" *United States v. Vasquez*, 918 F.2d 329 (2d Cir. 199). Thus, "jointly-indicted defendants are governed by a single speedy trial clock, and delay attributable to any one defendant is charged against the single clock." *United States v. Boscarino*, 6:23-CR-06107, 2023 U.S. Dist. LEXIS 186372 (W.D.N.Y. Oct. 17, 2023). "Time is excluded from the speedy trial clock where there is '[a] reasonable period of delay when defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted.'" *Id.* (citing 18 U.S.C. § 3161(h)(6)). "Congress has acknowledged that the purpose of Section 3161(h)(6) of the Speedy Trial Act was to ensure that the rules of severance were not altered, and that the government was not forced to prosecute the first defendant ready for trial separately or be subject to a speedy trial dismissal action…[thus] reasonable speedy trial time should be excluded when necessary to enable joint trials to go forward." *United States v. Lockwood*, 11-CR-085, 2012 U.S. Dist. LEXIS 176208 (W.D.N.Y. Dec. 12, 2012) (citing *United States v. Pena*, 793 F.2d 486, 489 (2d Cir. 2023)).

Defendant Talley's speedy trial clock has stayed at 70 since his arraignment on May 14, 2025. (Dkt. No. 266, pgs. 23; Dkt. No. 308) Talley filed his pretrial motions on June 1, 2026. (Dkt. No. 253) He did not object to co-defendants' multiple requests for extensions of time to file pretrial motions, and Talley filed at least one motion for an extension of time on his own behalf. (Dkt. No. 206) Edward Leeper, the only remaining

defendant who has not yet either filed pretrial motions or entered into a plea agreement, is due to file pretrial motions on or before December 21, 2026. (Dkt. No. 308) Time under the Speedy Trial Act has been excluded, from the "unitary time clock" in this case, through December 21, 2026, pursuant to 18 U.S.C. §§ 3161(h)(7)(A) and 3161(h)(7)(B)(iv). (*Id.*) The exclusion here is also reasonable, as to Talley and his co-defendants, pursuant Section 3161(h)(6). *United States v. Jones*, 143 F. Supp. 3d 78, 91 (W.D.N.Y. 2015) (noting that the reasonableness requirement of Section 3161(h)(6) "must be assessed in light of the strong presumption in favor of joint trials").

Talley is currently in New York State custody related to a state sentence. (Dkt. No. 94; Dkt. No. 266, pgs. 20-21) According to the Government, he has a conditional release date set for December 2026 with a maximum release date set for November of 2027. (Dkt. No. 266, pg. 22) At the outset of this case, Talley elected to remain in New York State custody. Thus, it appears that there is minimal prejudice to Talley remaining in custody at the present time. *See Lockwood*, 2012 U.S. Dist. LEXIS 176208 (noting that incarceration alone will not support a claim of prejudice sufficient to warrant severing defendant from co-defendants in his case).

For these reasons, the Court denies defendant Jason Talley's severance motion without prejudice to defendant's ability to renew his motion before Judge Sinatra.

## Omnibus Discovery Demands

The Court now turns to defendants Andres Pizarro Campos, Max Pizarro Campos, Cindy Frank, Latika Saintkitts, Chauncy Robinson, and Jason Talley's omnibus discovery demands as well as the Government's motion for reciprocal discovery.

*Motions for Joinder*

Defendants have moved to join in the discovery motions made by their co-defendants. (Dkt. Nos. 193, 194, 195-1, 254) The majority of the discovery issues raised herein apply to all defendants, and defendants have made numerous overlapping requests. The Court has thoroughly reviewed the papers submitted in this matter and finds that the Government has had an opportunity to substantively respond to all of the arguments made by defendants, and that joinder would not prejudice the Government. The request for joinder is granted with the further directive and findings that the decisions made by this Court as to each defendant's motions shall also be deemed a finding and order as to all other defendants in this case, to the extent relevant.

Therefore, in the discussion below, defendants Andres Pizarro Campos, Max Pizarro Campos, Cindy Frank, Latika Saintkitts, Chauncy Robinson, and Jason Talley will be referred to collectively as "defendants." In the event an issue or motion applies only to one or more specific defendant, the Court will so note.

*Rule 16 Discovery*

Defendants move for discovery and inspection pursuant to Federal Rule of Criminal Procedure 16. (Dkt. Nos. 112, 193, 194, 195, 253, 254) Defendants also seek expert disclosures pursuant to Rule 16(a)(1)(e) and Federal Rules of Evidence 702, 703 and 705. (*Id.*)

Rule 16(a) requires the Government to disclose certain evidence and information upon request of a defendant. While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the government's case against him." *United States v. Percevault*, 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that

a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the government's case-in-chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705. *See* Fed. R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Here, the Government appears to have provided substantial voluntary discovery which exceeds the scope of Rule 16. To that end, the Government has provided any statements made by defendants to law enforcement[10]; defendants' criminal history reports, search warrant applications and returns that explain the Zaso narcotics conspiracy in detail; Facebook evidence, police reports, witness statements, grand jury transcripts, phone records, Cash App records, as well as other evidence, information, and documents pertaining to the allegations in the Indictment. The Government indicates that it is aware of its obligations to provide continuing Rule 16 discovery, should additional material become known to the Government, and agrees to comply with this requirement. The Government also represents that it intends to use all items of evidence that

---

[10] The Government indicates that is not aware of any custodial statements by Andres Pizarro Campos, Cindy Frank, Latika Saintkitts, and Jason Talley. (Dkt. Nos. 201, 207, 218, 266) The Government indicates that it has provided Max Pizarro Campos and Chauncey Robinson's statements to law enforcement, including proffered statements by Robinson to the Government. (Dkt. Nos. 267, 278)

defendants have been provided with or have been made aware of in accordance with Rule 12(b)(4)(A) of the Federal Rules of Criminal Procedure.[11]

Based upon the representations made by the Government in their written responses, defendants' request for discovery pursuant to Rule 16 is denied as moot.[12] The Government is reminded that its disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c). The Government is also reminded of its continuing obligations pursuant to Rule 12(b)(4)(B). Finally, the Government is expected to comply with all requirements in Rule 16, Federal Rules of Evidence 702, 703, and 705, and Judge Sinatra's pretrial order as they apply to expert witnesses and testimony.

---

[11] Defendant Max Pizarro Campos seeks an order from the Court memorializing the Government's representations that it does not plan to introduce, in its case-in-chief at trial, any evidence recovered from defendant's surveillance system; evidence obtained from cell phones seized during the search of 204 Hazzard Street; and defendant's statements to Officer Carlson on February 22, 2022. The Court finds such an order to be unnecessary. Should the Government's position change and it seek to introduce this evidence against defendant as the case proceeds, defendant may challenge its admissibility at that time.

[12] Defendant Andres Pizarro Campos indicates that he was informed, by the Government, that a search was conducted at 28 Norway Park by United States Probation. (Dkt. No. 193, pg. 47) Defendant acknowledges that he has not provided a standing affidavit as to this residence nor has he made a motion to suppress evidence recovered from this search. (*Id.*) Defendant requests that the Government provide further information as to the circumstances of that search and "reserve[s] his right to further move against the search once the appropriate information [has] been provided to the defense." (*Id.*) The Government responds that it believes it has turned over relevant search warrants and affidavits, despite Andres Pizarro Campos' failure to establish standing in those items, and that to the extent any search warrant material was not turned over, the Government would speak with defense counsel and try to resolve the dispute. The search of 28 Norway was raised in prior defense counsel's motions in March of 2026. When current defense counsel was assigned to this case, he acknowledged that significant additional discovery was provided after the filing of the prior motions. Current defense counsel also stated that he reviewed the prior motions and had nothing further to raise. Thus, the Court finds this issue to be moot. *See United States v. Pirk*, 282 F. Supp. 3d 285 (W.D.N.Y. 2017) (holding that defendant, who neither owned, nor slept or stored personal belongings at, the clubhouse, lacked standing to challenge the warrant for search of clubhouse, and thus had no Fourth Amendment right of access to affidavit filed in support of warrant, absent showing he had reasonable expectation of privacy in the clubhouse).

*Bill of Particulars*

Defendants move for a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. (Dkt. Nos. 112, 193, 194, 195, 253, 254) Defendants seek, *inter alia*, information as to when they are each alleged to have joined the conspiracy; the specific acts committed by each defendant in furtherance of the conspiracy as well as the date, time, and place of those acts; the specific controlled substances involved and the amounts attributed to each defendant; who they are alleged to have sold the narcotics to; each defendant's role and overt acts; and the identities of co-conspirators. (*Id.*) The Pizarro Campos defendants seek further information as to how they are alleged to have maintained a drug involved premises and the manner in which they are alleged to have illegally possessed firearms. (*Id.*) Defendant Cindy Frank seeks particularization of documents demonstrating her alleged knowledge of Zaso's drug trafficking activities as well as particularization as to the date, time, place and manner in which she impeded the grand jury. (*Id.*)

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). However, "[t]he Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendants committed the crimes charged, or a preview of the Government's evidence or legal theories." *United States v. Rittweger*, 259 F. Supp. 2d 275, 291 (S.D.N.Y. 2003). In

determining whether a bill of particulars is warranted, a court is to consider "the complexity of the offense, the clarity of the indictment, and the degree of discovery otherwise afforded to defendants." *United States v. Shoher*, 555 F. Supp. 346, 349 (S.D.N.Y. 1983). It is well-settled that acquisition of evidentiary detail is not the purpose of a bill of particulars. *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990). Further, a defendant is not generally entitled to receive details of the government's conspiracy allegations through a bill of particulars. *United States v. Wilson*, 493 F. Supp. 2d 364, 372 (E.D.N.Y. 2006).

The charges here are neither complex nor difficult to understand. They involve, predominately, a conspiracy to distribute narcotics over a specific period of time; maintaining a premise for the purpose of manufacturing and distributing those narcotics; and the unlawful possession of firearms in furtherance of drug trafficking. The Indictment specifies the types and the approximate amounts of the illegal substances as well as the premise involved. The Indictment further states the predicate offenses underlying the Section 924(c) charge as to the Pizarro Campos defendants. As noted above, the Government has provided extensive discovery to defendants, including some of the relevant grand jury transcripts and witness statements. The Government has provided defendant Cindy Frank with the portion of her grand jury testimony which the Government believes to be false, and which serves as the basis for the obstruction of justice charge in the Indictment. The Indictment also specifically enumerates the topics which Frank allegedly lied about to the grand jury. Moreover, the Government has provided an email to each defense counsel summarizing the key evidence against their respective client. *See United States v. Calvente*, 12-CR-732, 2013 U.S. Dist. LEXIS 112620 (S.D.N.Y. July

26, 2013) ("A bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means.")[13]

Considering the allegations in the Indictment in conjunction with the materials produced in discovery, the Court finds that defendants have been provided with sufficient information to inform them of the charges against them, prepare a defense, avoid surprise at trial, and ensure against double jeopardy. The additional details sought by defendants amount to an attempt to use a bill of particulars as a discovery device. *See e.g. United States v. Trippe*, 171 F. Supp. 2d 230, 240 (S.D.N.Y. 2001) (denying request for "names of all co-conspirators and/or aidors and abettors…of the defendant"); *United States v. Barret*, 824 F. Supp. 2d 419, 439 (E.D.N.Y. 2011) (the nature of the wheres, when and with whoms of a conspiracy are frequently held to be beyond the scope of a bill of particulars since the government "is not required to prove exactly when or how a conspiracy formed or when or how a particular defendant joined the scheme"); *United States v. Walker*, 922 F Supp. 732, 739 (N.D.N.Y. 1996) (overt acts in furtherance of a conspiracy need not be disclosed); *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990) (finding that the district court acted well within its discretion denying defendant's request for a bill of particulars specifying when he joined the conspiracy, the identity of unindicted co-conspirators, and the precise dates and locations he was alleged to have transported heroin).

For these reasons, defendants' request for a bill of particulars is denied.

---

[13] Counsel for defendant Frank argues that a bill of particulars is necessary here because the volume of discovery has made it difficult to prepare a defense. However, the Government has provided counsel with email correspondence highlighting the relevant and specific evidence against defendant Frank.

*Witness Identities and Statements*

Defendants request disclosure of Government witness identities and statements prior to trial. (Dkt. Nos. 112, 193, 194, 195, 253, 254)

The Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("3500 material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination, and the Court cannot mandate them to be produced sooner. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

As discussed above, it appears that the Government has already produced a significant amount of witness statements and grand jury transcripts to defendants. Moreover, the Government indicates that it will disclose all *Jencks*/3500 material, in advance of trial, and at the time set forth by the District Court in accordance with its usual practice. In light of these representations, defendants' request for early disclosure of

witness identities and statements is denied as moot.[14]

*Brady and Giglio Materials*

Defendants move for the disclosure of any favorable, exculpatory or impeachment materials pursuant to *Brady*, *Giglio* and their progeny. (Dkt. Nos. 112, 193, 194, 195-1, 254)

The Government has an obligation to disclose exculpatory material, or material favorable to an accused as to either guilt or punishment, even when no affirmative request has been made. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Material "favorable to an accused" includes not only evidence that affirmatively tends to exculpate the defendant, but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002). "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant." *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001). "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not

[14] To the extent defendants are requesting statements of non-testifying witnesses, their motions are denied. There is no obligation that the Government produce the statements of individuals who are not testifying at trial. *United States v. Rigas*, 583 F.3d 108, 125-26 (2d Cir. 2009). However, in the event a non-testifying witness's statement contains exculpatory information or information that would impeach the credibility of a Government witness, that material is subject to disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

deprived the defendant of due process of law simply because it did not produce the evidence sooner." *Id.* at 144.

Here, the Government acknowledges its affirmative duty to provide defendants with exculpatory evidence, as well as evidence that the defense might use to impeach the Government's witnesses at trial. The Government represents that it is aware of its obligations and responsibilities under *Brady* and acknowledges its continuing duty under *Brady* to produce such material, if and when it is made aware of it. In addition, the Government agrees to provide impeachment *Giglio* material, *i.e.*, promises of leniency or immunity agreements with government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, any payments to witnesses or family members thereof, and all other promises or considerations given by government personnel to government witnesses or family members thereof, in accordance with the schedule set by the District Court prior to trial and no later than when the Government produces and delivers the *Jencks* material.

Given the Government's representations and for the reasons just stated, defendants' motion to compel the production of *Brady*/*Giglio* material is denied as moot. The Government is reminded of its continuing *Brady* obligations and, consistent with *Coppa*, the Government shall timely disclose any *Brady* and *Giglio* material to defendants. *See United States v. Padovani*, 14-CR-00224, 2016 U.S. Dist. LEXIS 133400, at *4 (W.D.N.Y. Sept. 28, 2016).

Also pursuant to *Brady*, defendant Max Pizarro Campos requests any and all information regarding the CI's failure to identify the Pizarro Campos defendants in a photo array. (Dkt. No. 283, pgs. 28-29) The Government responds that it has provided defendant with the report detailing the CI's failure to identify the Pizarro Campos defendants. The Government further indicates that it has requested, from the DEA, any additional information in the DEA's possession regarding the photo array. The Government represents that it will produce any further information it receives regarding the photo array to defendant. Based on the Government's representations, and because defendant is already in possession of the potentially exculpatory information here, namely the CI's failure to identify the Pizarro Campos defendants in a photo array, defendant's request is denied as moot.

Defendant Max Pizarro Campos also requests disclosure of co-defendants' plea agreements, and further requests that the Court conduct an *in camera* review of any presentence reports of co-defendants or cooperating witnesses for purposes of determining whether those documents contain any *Brady* or *Giglio* material. (Dkt. No. 195-1, pgs. 47-49)

The Government responds that, pursuant to its obligations under *Jencks* and *Giglio*, it will provide plea agreements, proffer agreements, cooperation agreements and any similar documents pertaining to testifying witnesses before trial, consistent with the District Court's pretrial order. The Government further states that it will review the presentence reports of its cooperating witnesses and submit the unredacted reports, as well as proposed redacted reports, to the District Court for an *in camera* review. Thus, defendant's request is denied without prejudice to his ability to renew this request before

Judge Sinatra at the time of trial. *See United States v. Wilson*, 15-CR-142, 2017 U.S. Dist. LEXIS 62527 (W.D.N.Y. April 25, 2017) ("Like the plea agreements, it is premature to determine what additional pretrial service reports or presentence reports, other than those of testifying witnesses, may merit an *in camera* review. Likewise, the trial court is in a better position to conduct such a review. To the extent defendants request the pretrial service reports or presentence reports of non-testifying individuals, their request is denied without prejudice to their ability to make a more specific request to Judge Wolford.").

*Disclosure of Grand Jury Material*

Defendants move for disclosure of grand jury material pursuant to Rule 6 of the Federal Rules of Criminal Procedure. (Dkt. Nos. 112, 193, 194, 254)

"The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991). Further, grand jury proceedings are entitled to a "presumption of regularity", *Hamling v. United States*, 418 U.S. 87, 139 n. 23 (1974), and "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *R. Enterprises, Inc.*, 498 U.S. at 300. Moreover, the law in this Circuit is clear that grand jury proceedings receive a presumption of secrecy and closure. *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996). Because of these principles, a defendant seeking disclosure of grand jury minutes must show a particularized need, in that (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured to cover only what is needed. *Id.*

Under Rule 6(e)(3)(E)(i) of the Federal Rules of Criminal Procedure, disclosure of grand jury material may be made "preliminarily to or in connection with a judicial proceeding[.]" And under Rule 6(e)(3)(E)(ii), disclosure may be made "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]" Under either provision, there must be a strong showing of a particularized need for grand jury material before any disclosure will be permitted. *See United States v. Gogolack*, 816 F. Supp.3d 375 (W.D.N.Y. 2026) (accord *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 443 (1983). "Unspecified allegations of impropriety and speculation do not satisfy this heavy burden." *United States v. Elliott*, 363 F. Supp. 2d 439, 451 (2d Cir. 2005). Therefore, "review of grand jury minutes is rarely permitted without specific factual allegations of government misconduct." *United States v. Torres*, 901 F.2d 205, 233 (2d Cir. 1990). "Speculation regarding the possible insufficiency of evidence presented to the grand jury does not warrant the disclosure of the grand jury materials." *United States v. Laster*, 06 CR 1064, 2007 U.S. Dist. LEXIS 77732 (S.D.N.Y. Oct. 19, 2007), *aff'd*, 313 F. App'x 369 (2d Cir. 2009).

Defendants here have failed to show any particularized need for grand jury material. There is no indication of misconduct or irregularity with respect to the grand jury proceedings in this case. No specific allegations of government misconduct have been raised. Moreover, it appears that defendants have already been provided with a number of relevant grand jury transcripts, as well as additional extensive discovery. Any argument that they are subject to a "bare bones" indictment is without merit. Some defendants here also seem to argue that they need to view additional grand jury material so that they can move to dismiss the Indictment. This contention is also without merit. The Indictment in

this case is sufficient. It tracks the language of the relevant statutes, sets forth the elements of crimes charged, and informs defendants of the allegations against them. Thus, defendants' arguments essentially amount to a fishing expedition. *See United States v. Baker*, 21-CR-6042, 2022 U.S. Dist. LEXIS 86421 (W.D.N.Y. Feb. 17, 2022) ("A general desire, like Defendant's, to ferret out suspected improprieties or to demonstrate insufficiency of evidence does not warrant disclosure of grand jury materials."); *United States v. Rodrigues*, 22-CR-391, 2024 U.S. Dist. LEXIS 5265 (S.D.N.Y. Jan. 10, 2024) (Speculation that the grand jury may have received incomplete or erroneous information is "precisely the type that courts in this district have routinely rejected as basis for vitiating grand jury secrecy.").

For these reasons, the Court finds that defendants have not satisfied the high burden of demonstrating a particularized need for the disclosure of additional grand jury material, and their request for disclosure of grand jury material is denied.

*Identification Procedures*

Defendants request notification as to whether any evidence to be offered at trial relates to or is derived from a witness' identification of their person, voice, handwriting, picture, or composite sketch, as well as specific information regarding the procedure used. (Dkt. Nos. 112, 193, 194, 253, 254) The Government responds that a photobook was used during this investigation which will be provided to defense counsel.[15] Should an issue arise with respect to any out-of-court identification procedure, defendants may

[15] The Government indicates that with regard to Saintkitts, at least some of the Government's witnesses had firsthand experience with defendant. (Dkt. No. 201)

make the appropriate motion before Judge Sinatra at the time of trial.[16]

*Co-Conspirator Statements*

Defendants move for disclosure of any co-conspirator statements the Government will seek to introduce at trial, as well as an order barring the introduction at trial of any statements by non-testifying co-conspirators. (Dkt. No. 112, 193, 194, 195, 254) The Government submits that it will proffer evidence in support of the admission of out-of-court co-conspirator statements at the time required by the District Court, and that its timely disclosure of documents and 3500 material will be more than sufficient to support a preliminary finding, by the trial court, as to a foundation for admission of co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E).

Rule 16 does not provide for the disclosure of co-conspirator statements. To the extent that the statements in question constitute 3500, *Giglio*, or *Brady* material, those statements will be disclosed in accordance with the procedures discussed above. It also appears that the Government has already disclosed some co-conspirator statements in its extensive discovery production. Otherwise, Federal Rule of Evidence 801(d)(2)(E) does not contain a requirement as to pretrial notice of statements. In addition, the admissibility of any co-conspirator statements, as well as any *Bruton* implications, are best addressed by the District Judge at the time of trial. *United States v. Anguiera*, 11-CR-116; 2012 U.S. Dist. LEXIS 51862 (WDNY April 12, 2012) ("[T]he relief sought for

---

[16] Defendants reserve their right to ask for a hearing to determine the audibility of any recordings the Government seeks to introduce against them at trial. (Dkt. Nos. 112, 194, 254) The Government responds that it has controlled purchase recordings involving Saintkitts and another individual as well as controlled purchase recordings involving Robinson. (Dkt. No. 201, 267) Defendants do not specify what portions of these recordings are inaudible. Defendants' motion is denied without prejudice to their ability to renew their request, with additional specificity, before Judge Sinatra at the time of trial.

excluding non-testifying co-conspirator statements…[i]s better considered by the District Judge prior to trial and deferred for that consideration.")

Therefore, defendants' requests for disclosure and exclusion of co-conspirator statements are denied without prejudice to renewal before Judge Sinatra at the time of trial.

*Rule 404(b) and Impeachment Evidence*

Defendants move for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). (Dkt. Nos. 112, 193, 194, 195, 254 ) Defendants also move for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. (*Id.*) The Government states that it will disclose any evidence in its possession which might fall under the ambits of Rules 404(b), 608, and 609 when directed to do so by the trial court. The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Based upon the Government's representation that it will disclose Rule 404(b) evidence and impeachment evidence when required to do so by the District Court, defendants' motions are denied as moot. The issue of admissibility of evidence pursuant to Federal Rules of Evidence 404(b), 608 and 609 is left to the determination of Judge Sinatra at the time of trial.

*Voir Dire of Expert Witnesses*

Defendants move for an order allowing *voir dire* of any Government experts outside the presence of the jury. (Dkt. Nos. 112, 193, 194, 254) Determinations as to the manner of *voir dire* of experts are to be made by the District Judge at the time of trial.

Therefore, defendants' motion is denied without prejudice to renewal before Judge Sinatra.

*Preservation of Rough Notes*

Defendants move for preservation of all rough notes taken as part of the investigation. (Dkt. Nos. 112, 193, 194, 195, 254) The Government does not object to this request. The Court grants defendants' motion and directs the Government to arrange for the preservation of all rough notes.

*Leave to Make Additional Motions*

Defendants move to reserve the right to make further motions as necessary. (Dkt. Nos. 112, 193, 194, 195, 253, 254) To the extent that defendants intend to bring motions based upon new information or evidence that has not yet been disclosed, their request for leave to file additional motions is granted. To the extent that defendants intend to bring motions concerning issues that could have been raised prior to the previous motion deadline, defendants' request is denied without prejudice to bring the motion upon a showing of good cause for the untimely filing.

*Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure including the opportunity to inspect, copy or photograph books, papers, documents, photographs, tangible objects or copies or portions thereof which are in the possession, custody or control of defendants and which defendants intend to introduce as evidence at trial, the results or reports of any physical or mental examinations or scientific tests or experiments made in connection with the case, and a written summary of any expert witness testimony. Pursuant to Federal Rule

of Evidence 807, the Government also requests advance disclosure of any statements defendant proposes to use at trial. The Government's motion for reciprocal discovery is granted, and defendants are reminded that their disclosure obligations continue up through and during trial. *See* Fed. R. Crim. P. 16(c).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant Max Pizarro Campos' motion to suppress evidence be denied. (Dkt. No. 195) The Court will hold an evidentiary hearing to address defendant Max Pizarro Campos' motion to suppress statements on **January 12, 2027 at 10:30 a.m.**

It is recommended that defendants Andres Pizarro Campos, Cindy Frank, and Latika Saintkitts' motions to dismiss the Indictment be denied. (Dkt. No. 112, 193, 194) Defendant Jason Talley's motion for severance is denied without prejudice to renew his request before the District Court. (Dkt. No. 253)

It is ordered that defendants Andres Pizarro Campos, Max Pizarro Campos, Cindy Frank, Chauncy Robinson, Latika Sainkitts, and Jason Talley's omnibus discovery demands are decided in the manner detailed above. (Dkt. Nos. 112, 193, 194, 195, 253, 254) The Government's request for reciprocal discovery is granted. (Dkt. Nos. 201, 207, 218, 266, 267, 278)

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ordered that this Report, Recommendation and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to the recommendation portion of this Report, Recommendation and Order must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with

the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59. Any requests for an extension of this deadline must be made to Judge Sinatra. **Any objections to the Court's recommendation that defendant Max Pizarro Campos' motion to suppress evidence be denied shall be filed in accordance with this procedure and pursuant to these deadlines. Defendant Max Pizarro Campos' motion to suppress statements is held in abeyance pending an evidentiary hearing, as set forth above. The parties will have an opportunity to the file objections to the Court's recommendation as to the motion to suppress statements following the Court's issuance of that determination.**

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation and Order WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

**SO ORDERED**.

Dated: November 10, 2026
Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge